**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DANIELS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 13 C 6959** |
| **v.** | ) | |
| | ) | **Magistrate Judge Daniel G. Martin** |
| MENARD, INC., | ) | |
| a Wisconsin Corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This is a personal injury action in which Plaintiff John Daniels ("Daniels") alleges that on September 21, 2011 and October 13, 2011, he struck his head on a staircase located in the Menard, Inc. ("Menard") store in Melrose Park, Illinois. Daniels asserts claims based on state law negligence and voluntary undertaking theories against Menard. The Court has jurisdiction based on diversity of citizenship, and the parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Menard has moved for summary judgment. For the reasons that follow, Menard's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are primarily taken from Defendant's Local Rule 56.1(a) Statement (doc. 46) and are undisputed. Additional facts are taken from Daniels' deposition testimony and include a citation to that testimony. Daniels' date of birth is March 8, 1923, making him eighty-eight years (88) old at the time of incidents. At his deposition, Daniels testified that he is visually impaired. He has glaucoma and can only see straight ahead. Daniels has no peripheral vision.

On September 21, 2011, Daniels went to the Menard store to buy braces for railings in his front and back door. Daniels was driven to the Menard store on September 21, 2011 by his wife. Daniels' wife dropped him at the front door of the store and he entered the store alone. Daniels then located and walked up to a Menard employee without assistance. Although Daniels could not

remember exactly what he told the Menard employee, he testified that he "walked over to the young lady and said, young lady, I need someone to escort me. I'm visually impaired and I need some things in the store, and she called someone." Daniels Dep. at 50. When asked why he wanted someone to escort him on September 21, 2011, Daniels testified that his vision is impaired and he needed help finding the product that he came to buy. Id. at 51-52.

Shortly thereafter, Menard employee John Malone ("Malone") approached Daniels. Daniels testified that he told Malone what he needed and asked Malone to take him to find the item. Id. at 57-58. In his deposition, Daniels stated what happened next:

> A.  We were down there, then he left and went somewhere; and when I looked for him again, he was way some other place.
>
> Q.  So the young man walks away from you, right?
>
> A.  As far as I known he went away.
>
> Q.  You stayed where you were?
>
> A.  I was walking around where I was there.
>
> Q.  So you were walking around an area –
>
> A.  I was moving around. That's all.
>
> Q.  And you look up, and you see that the young man is a distance away from you?
>
> A.  No, I did not look up. I just happened -- when I was looking around, I wanted to know something, I looked for him, he wasn't around. So I spotted him. I said, where are you at. He was way over there someplace.

Id. at 58-59. Daniels then described the first accident: "So I was going toward him; and somehow I went across the floor; and I hit a low spot in the store; and I hit my head in a spot in the store." Id. at 59.

Daniels claims he was involved in a second similar incident on October 13, 2011 at the same Menard store. On October 13, 2011, Daniels' wife dropped him off in the front of the Menard store. Daniels entered the store alone and approached Menard employee Barbara Daniszewski

("Daniszewski"). Daniels testified that he told Daniszewski that he "needed someone to help [him] with something that [he] needed to buy." Daniels Dep. at 95. Daniszewski testified that Daniels "came up to me asking for assistance with reading tags, the little bin tags that we have on the items. He said he was having trouble reading since they are smaller." Daniszewski Dep. at 13. Besides not being able to read the bin tag, Daniels did not express to Daniszewski that he had problems with his eyesight or vision. At no point did Daniels indicate to Daniszewski that he was visually impaired and needed help walking throughout the store. Daniels did not tell Daniszewski that he was visually impaired.

Daniszewski asked Menard employee Nina Gryniewicz to assist Daniels and take him to the hardware desk to find some nuts and bolts. Daniels did not tell Gryniewicz that he had a vision impairment. Gryniewicz was taking Daniels to the hardware department when the second incident occurred. Daniels testified:

> A. After that I was left alone; and I looked around; and I said, where are you at, where did the young lady go; and she was way over by the stairwell case over there; and I went over there.
>
> Q. Okay.
>
> A. That's when I hit my head on the stairwell case. I didn't see it.

Daniels Dep. at 96. Gryniewicz did not witness the incident as her back was turned at the time, and Daniels was walking behind Gryniewicz when he bumped his head on the staircase.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists that precludes summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 701 (7th Cir. 2015). A genuine issue of material fact exists when "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The parties agree that Illinois tort law applies in this diversity action. "To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." <u>Swearingen v. Momentive Speciality Chemicals, Inc.</u>, 662 F.3d 969, 972 (7th Cir. 2011). "Whether a duty exists in a particular case is a question of law to be determined by the court." <u>Ward v. K Mart Corp.</u>, 554 N.E.2d 223, 226 (Ill. S. Ct. 1990). "In determining whether a duty exists, four factors are typically considered: '(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; (4) the consequences of placing that burden on the defendant.'" <u>Garest v. Booth</u>, 12 N.E.3d 661, 672 (Ill. App. 2014); <u>Ward</u>, 554 N.E.2d at 226-27.

It is undisputed that Daniels was an invitee at Menard's store on September 21, 2011 and October 13, 2011. "As a general rule, a landowner owes a business invitee 'the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use.'" <u>Swearingen</u>, 662 F.3d at 972; <u>Reid v. Kohl's Dept. Stores, Inc.</u>, 545 F.3d 479, 481 (7th Cir. 2008) (stating "[i]n Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them."). The general rule does not apply when the danger at issue is open and obvious. "Under the open-and-obvious doctrine, a landowner is not liable for physical harm caused to invitees by an condition on the land whose danger is known or obvious to them, unless the landowner should anticipate the harm despite such knowledge or obviousness." <u>Swearingen</u>, 662 F.3d at 972; <u>Buchaklian v. Lake County Family YMCA</u>, 732 N.E.2d 596, 600 (Ill. App. 2000) (noting "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious."). A dangerous condition is open and obvious when "'both the condition and the risk are apparent to and

would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" Menough v. Woodfield Gardens, 694 N.E.2d 1038, 1042 (Ill. App. 1998) (quoting Deibert v. Bauer Brothers Construction Co., 566 N.E.2d 239, 241 (Ill. S.Ct. 1990)).

Menard argues that it owed no duty to warn or protect Daniels due to the "open and obvious" nature of the staircase. Daniels does not dispute that the staircase is an open and obvious danger. Instead, Daniels makes three arguments in support of his contention that Menard is not entitled to summary judgment. First, Daniels argues that Menard owed a duty of care to him because it was reasonably foreseeable that he would become distracted by his search for the item he needed as well as the employee that had been escorting him through the store. Alternatively, Daniels argues that Menard's employees voluntarily undertook to escort him through the store. Finally, Daniels contends that the safer alternative route theory is inapplicable here.

## A.  Distraction Exception

Daniels first contends that the "distraction exception" to the "open and obvious" rule applies in this case. "Under the distraction exception, a possessor of land can be held liable for injuries caused by an open and obvious hazard if the possessor should have anticipated the harm despite the condition's obviousness." Savage v. Ritchie Bros. Auctioneers (Am), Inc., 2012 WL 1520710, at *3 (N.D. Ill. Apr. 30, 2012). A possessor of land may anticipate harm where there is "reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned." Bucheleres v. Chicago Park Dist., 665 N.E.2d 826, 834 (Ill. S.Ct. 1996).

Daniels likens this case to Erne v. Peace, 517 N.E.2d 1203 (Ill. App. 1987). In that case, a duty was imposed pursuant to the distraction exception where the plaintiff was injured when she fell off a step/stoop while exiting defendants' premises. The plaintiff alleged that she was legally

blind and incapable of seeing the area in front of her, that defendants knew of the condition, yet they did not warn or assist her with regard to the change of elevation during her exit from the building. The <u>Erne</u> court held that the "defendants had reason to expect that despite the obviousness of the condition and the fact that the plaintiff had encountered the step/stoop when she entered the premises, she would likely fail to protect herself against it." <u>Id</u>. at 1206. The court concluded "under the Restatement (Second) of Torts, that if an invitee is likely to fail to protect herself from harm, the defendant is aware of this fact, and the defendant's burden to warn or protect is minimal, a duty exists as a matter of law." <u>Id</u>. at 1207. The court held that it was a jury question whether the defendant property owners exercised the care required under those circumstances. <u>Id</u>.

     <u>Erne</u> compels the Court to conclude that even if the staircase was an open and obvious condition, a genuine issue of material fact exists as to whether Menard exercised the care required with regard to the September 21, 2011 visit. Here, as in <u>Erne</u>, it was reasonably foreseeable or likely that despite the obviousness of the staircase a visually impaired customer would likely fail to protect himself against walking into the staircase where Menard was aware of the customer's visual impairment. Having found the foreseeability and likelihood of injury factors weigh in favor of a duty of care, the remaining factors of the duty analysis–the burden of guarding against the injury and the consequences of placing that burden on Menard-- also weigh in favor of finding a duty. The burden on Menard in guarding against injury to a customer who requested assistance because of his visual impairment was slight. It would be a minimal burden on Menard to warn or assist known visually impaired customers around the staircase. Having agreed to escort Daniels around the store because of his visual impairment, Menard had the burden of guarding against an unreasonable risk of injury in navigating the store. Whether Menard breached that duty by failing to exercise a reasonable degree of care is a question of fact. Accordingly, as to the September 21, 2011 visit, Menard is not entitled to summary judgment on Daniels' negligence claim as a

matter of law.[1]

There is a key factual difference between the September 21, 2011 visit and the October 13, 2011 visit which precludes application of the Erne case to the second incident. There is no evidence in the record that Daniels requested assistance from Menard to guide him through the store due to his vision impairment on his second visit. On October 13, 2011, Daniels entered the Menard store, approached a Menard employee and told the employee he "needed someone to help [him] with something that [he] needed to buy." Daniel Dep. at 95. It is undisputed that on October 13, 2011, Daniels did not notify Menard that he was visually impaired. Given this key factual distinction between the Erne case and the October 13, 2011 incident, Daniels cannot rely on the distraction exception to the open and obvious rule. To the extent Daniels suggests that the distraction exception applies to the October 13, 2011 incident because he became "distracted by the merchandise and momentarily for[got] or fail[ed] to discover the existence of" the staircase (doc. 51 at 7), the Court rejects that argument. Daniels testified otherwise in his deposition–that he was *not* distracted at the time he struck his forehead on the staircase on October 11, 2011. Daniels Dep. at 102. Because Menard had no duty to warn or protect against the danger presented by the open and obvious staircase and it could not have anticipated harm despite the staircase's obviousness, Menard it is entitled to judgment as a matter of law on the negligence claims as to the October 13, 2011 incident.

---

[1] Contrary to Menard's suggestion, the notes to Section 342 of the Restatement (Second) of Torts the Erne court relied on are not limited to cases where the plaintiff is blind and the defendant knew that the plaintiff was blind at the time of the incident. See Nelsen v. Nelsen, 23 P.3d 424, 429 (Or. App. 2001) (applying section 342 where plaintiff was not blind but had peripheral vision only in her left eye and diminished vision in her right eye). The issue is whether "the possessor has knowledge of facts from which he should realize that an ordinary warning will not be sufficient to notify the licensee of the danger, or to enable him to protect himself against it." Erne, 517 N.E.2d at 1206 (quoting Restatement (Second) of Torts, section 342, comment k). Comment K to Section 342 of the Restatement gives an example of an "extreme case" as in the "case of a blind man, he may even be required to give physical assistance to enable the licensee to avoid the danger." Id. at 1206-07.

The case of <u>Prostran v. the City of Chicago</u>, 811 N.E.2d 364 (Ill. App. 2004), relied upon by Menard, does not compel a different result as to the September 21, 2011 incident.  In <u>Prostran</u>, a visually impaired pedestrian brought a negligence action against the City of Chicago for injuries she sustained when she fell while crossing a dug-up section of sidewalk that was under construction and contained no barricades or warning signs.  The trial court granted summary judgment for the defendant and found that it owed no duty to plaintiff as the defect in the sidewalk was open and obvious.  <u>Id</u>. at 366.  On appeal, the plaintiff argued that due to her visual handicap the "defect of the sidewalk was not open and obvious and that the City should have anticipated that visually disabled people might not notice the condition, appreciate the risk, and avoid the area." <u>Id</u>.  The appellate court affirmed, finding plaintiff's testimony confirmed that she had knowledge of the condition of the sidewalk notwithstanding her visual impairment and the condition of the sidewalk was open and obvious.  As to the distraction exception to the open and obvious rule, the plaintiff asserted that she was "looking at areas of the alley sidewalk filled with mud, rocks and dug out areas, but she did not see the specific rock that caused her to fall until afterwards."  <u>Id</u>. at 370. The court declined to extend the distraction exception to a situation where the plaintiff claimed that "she was distracted from a specific aspect of the sidewalk by the general condition of the sidewalk." <u>Id</u>. at 371.

Unlike <u>Prostran</u>, Daniels does not claim he was distracted by the general condition of the staircase.  Rather, Daniels testified that on September 21,2011, he sought assistance from a Menard employee in navigating the store due to his visual impairment, another Menard employee agreed to escort him through store, but then left Daniels alone.  Daniels was distracted by his search for the Menard employee when he struck his head on the staircase.  Daniels Dep. at 59. Additionally, the plaintiff in <u>Postran</u> was aware of the dangerous condition of the sidewalk before she fell, yet she chose to walk through the construction.  <u>Postran</u>, 811 N.E.2d at 88.  Here, Daniels did not observe the staircase and then, choose a dangerous path.  Daniels testified that he did not

see the low-hanging area prior to striking his head.  Daniels Dep. at 67.

Menard cites Carroll v. Chicago, B & Q. Ry. Co., 142 Ill.App. 195, 197 (Ill. App. 1908), for the proposition that the "misfortune of being blind or deaf does not relieve the afflicted person from the duty to exercise ordinary care, but rather imposes upon him the duty of greater precaution to avoid injury, since strangers have no notice of the infirmity."  Carroll is also distinguishable.  The plaintiff in Carroll was killed while trespassing on a railroad track and there was no evidence that the railroad had knowledge that the plaintiff was deaf.  Id. at 197.  As a trespasser, the Carroll plaintiff was protected only from willful and wanton conduct by the railroad.  Id.  The court held that "employees of a railroad company are under no obligation to keep a lookout for trespassers upon the right of way of a railroad, and are not guilty of wilful or wanton negligence, as against such trespassers, for failing to do so."  Id. at 197-98.  The court found that the plaintiff was killed because of his own negligence.  In the present, Daniels was an invitee, not a trespasser, of Menard's store.  Additionally, the record reveals that on September 21, 2011, Daniels informed Menard that he was visually impaired and needed assistance in navigating the store, whereas the railroad in Carroll had no knowledge that the plaintiff was deaf.

**B.  Voluntary Undertaking**

Daniels next asserts that the voluntary undertaking doctrine is applicable here and precludes the entry of summary judgment in favor of Menard.  Daniels contends that even if a duty does not exist to warn or protect him from the staircase, Menard's employees voluntarily assumed the duty.  "Under the voluntary undertaking theory, a duty, limited to the extent of the undertaking, may be imposed on a person who voluntarily agrees to perform a service necessary for the protection of another person or their property."  Day v. Menard, 899 N.E.2d 501, 504 (Ill. App. 2008).  "One who voluntarily undertakes to render services to another is liable for bodily harm caused by his failure to perform such services with due care or with such competence and skill as

he possesses." <u>Siklas v. Ecker Center for Mental Health, Inc.</u>, 617 N.E.2d 507, 512 (Ill. App. 1993); <u>see also</u> Section 323 of the Restatement (Second) of Torts. "The scope of an assumed duty is limited by the extent of the undertaking." <u>Id</u>.

Daniels contends that on September 21, 2011, Menard's employee voluntarily undertook to lead him throughout the store after Daniels asked for such assistance due to his visual impairment, but then failed to carry through with that assistance when he left Daniels alone without assistance. According to Menard, if a customer requests specific assistance, or needs accommodations, Menard employees will help them. Doc. 46 at ¶ 34. Daniels testified that, although he did not remember specifically what he said to the Menard employee when he entered the store on September 21, 2011, he told the employee that he needed an escort, he was visually impaired, and he needed some things in the store. Daniels Dep. 50, 52. This evidence, taken in the light most favorable to Daniels, sufficiently demonstrates a voluntary undertaking to escort Daniels throughout the store because of his visual impairment. Menard had a duty to exercise reasonable care in performing the services which made up its undertaking on behalf of Daniels.

The Court rejects Menard's argument that it is nevertheless entitled to summary judgment because Daniels cannot establish reliance on its undertaking or that he suffered harm because of that reliance. In the <u>Day</u> case cited by Menard, the plaintiff requested defendant's employee's assistance in loading landscaping materials into her truck. Defendant's employee "voluntarily accepted the task to lower the tailgate of the plaintiff's truck and load merchandise but failed to perform the undertaking within 15 minutes of plaintiff's arrival to the secured area." <u>Day</u>, 899 N.E.2d at 505. The plaintiff decided not to wait longer for defendant's employee's help, loaded the merchandise into the truck herself, and injured herself in the process. <u>Id</u>. Under these circumstances, the court held that the plaintiff could not show that defendant's failure caused her injury. <u>Id</u>.

In this case, on September 21, 2011, Daniels requested Menard's assistance because of his visual impairment, waited for an employee to escort him through the store, was met by an employee who began leading him through the store, and was then left alone by the employee. Daniels testified that he was trying to locate the Menard employee who agreed to escort him and was walking toward the employee when he struck his head on the staircase on September 11, 2011. Daniel Dep. at 59. Therefore, unlike the plaintiff in <u>Day</u>, Daniels did not decide not to utilize Menard's assistance. Viewing the evidence most favorably to Daniels, a reasonable jury could find that Daniels relied on Menard's undertaking and suffered harm because of that reliance.

As to the October 13, 2011 incident, Menard is entitled to judgment as a matter of law on Daniels' claim pursuant to a voluntary undertaking theory. Daniels has not offered evidence from which a reasonable trier of fact could find that Menard voluntarily undertook a duty to escort him through the store because of his visual impairment. The extent of Menard's undertaking was limited to helping Daniels find the item he wanted to buy. Menard cannot be found to have assumed a duty to guide Daniels through the store due to his vision impairment where there is no evidence that Daniels told any Menard employee that he had a visual impairment that prevented him from walking through the store without assistance. Because there is no evidence that Menard voluntarily undertook to escort Daniels through the store on October 13, 2011 because of a visual deficiency, Menard is entitled to judgment as a matter of law on this voluntary undertaking claim.

## C.    Contributory Negligence

Finally, Menard argues that Daniels was contributorily negligent in failing to take a safe alternative route through the store. Menard maintains that a "safer alternative existed if [Daniels] chose to walk around the staircase." (Doc. 47 at 11). According to Menard, in both instances, "a Menard employee walked past the staircase and did not hit the staircase, thereby demonstrating that a safer alternative means existed." Id. Daniels responds that the safer alternative route theory

is inapplicable to this case because he did not consciously choose a more dangerous path as he did not see the staircase prior to striking his head.

"If a person has available to him two different ways of proceeding, one dangerous or hazardous and the other safe, and he consciously chooses the former and is injured as a consequence of his choice, he is contributorily negligent." Blacconeri v. Aguayo, 478 N.E.2d 546, 550 (Ill. App. 1985). Illinois courts "have consistently recognized that evidence of the existence of a safer alternative, known to but not chosen by the plaintiff, is properly admissible to show contributory negligence." Id. A plaintiff can be held contributorily negligent as a matter of law "'only in those cases in which all of the evidence viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict on that evidence could ever stand.'" Cook v. Hoppin, 783 F.2d 684, 692 (7th Cir. 1986) (quoting Pedrick v. Peoria & Eastern Railroad Co., 229 N.E.2d 504 (Ill. S.Ct. 1967)).

The evidence does not so overwhelmingly favor Menard that it is entitled to judgment in its favor on the issue of contributory negligence as a matter of law. Menard points out that Daniels testified that at the time of the first incident, he was "moving around" in the store, he was not headed to a particular destination, no one told him a path to follow, and he was not following a Menard employee. Daniels Dep. at 70-71. While that is true, Menard neglects to recognize that Daniels also testified that he was walking towards the employee who left him alone in the store at the time he struck his head. Daniels testified that after looking for the employee who had been assisting him but left him alone, he saw the employee "way over there someplace" and was then "going toward [the employee]" when he struck his head. Id. at 59. Daniels argues that he was unaware that he was choosing a dangerous path. According to Daniels, he is visually impaired and did not see the staircase prior to striking his head on September 21, 2011. Id. at 67. Under these circumstances, the issue of Daniels' contributory negligence on September 21, 2011 is a question of fact.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [45] is granted in part and denied in part.  This case is set for a status hearing on May 21, 2015 at 9:30 a.m.

**E N T E R:**

_Daniel G. Martin_
**Daniel G. Martin**
**United States Magistrate Judge**

**Dated:  April 29, 2015**